ROGER WENTHE, PLLC
Roger Wenthe
Nevada Bar No. 8920
2831 St. Rose Pkwy. # 200
Henderson, NV 89052
T: 702-971-0541
roger.wenthe@gmail.com
*Local Counsel for Plaintiff*
*(Additional counsel appear on signature page)*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| WADE ALLEN, individually, and on behalf of all others similarly situated, | Case No.: No. 3:24-cv-00231-CLB |
| Plaintiff, | UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND CERTIFICATION OF FLSA COLLECTIVE AND RULE 23 CLASS FOR SETTLEMENT PURPOSES |
| vs. | |
| BARRICK GOLD OF NORTH AMERICA, INC., | |
| NEVADA GOLD MINES, LLC. | |
| and | |
| TURNER STAFFING GROUP, LLC, | |
| Defendants. | |

## I. INTRODUCTION

Wade Allen (Named Plaintiff)—on behalf of himself, the Rule 23 Class Members (as that term is defined herein), and the Opt-in Plaintiffs (as that term is defined herein)—and Turner Staffing Group, LLC,  Barrick Gold of North America, Inc., and Nevada Gold Mines, LLC (collectively, Defendants, together with Plaintiff, the Parties) have reached a settlement of this lawsuit (the Action), which alleges Defendants misclassified hourly workers as exempt and failed to pay them overtime wages in violation of the Fair Labor Standards Act (FLSA) and, as to those working in Nevada, Nevada Revised Statutes (NRS) § 608.018. *See First Amended Collective and Class Action Complaint* (filed herewith*)*.

The Gross Settlement Amount is $1,500,000.00, and the Net Settlement Fund is at least $948,000.00, to be allocated amongst 198 FLSA Collective Members, of whom 148 are also members of the Nevada Class Members (including the Named Plaintiff), based on their employment dates, pay rates, and work hours, as reflected in Defendants' records. *See* Joint Stipulation of Settlement.

If the Agreement is approved, the Rule 23 Class Members will receive a "Notice of Class and Collective Action Settlement" (Notice) form notifying them of the settlement, attached as Exhibits 2A, 2B, and 3. These Class Members will have 60 days from the initial mailing of the Notice Packet to: (a) submit a valid Claim and Consent Form (for FLSA Collective members); (b) submit a Request for Exclusion from the settlement (for Nevada claims); or (c) make an objection to the settlement. *See* Joint Stipulation of Settlement ¶¶ 2(f), 2(x), 6(c)–(e), 6(g)(ii), 6(h)(i). After the 60-day notice period and resolution of any objections or exclusion requests, Named Plaintiff will submit a motion for final approval in accordance with the procedures set forth in the Settlement Agreement. *Id*.

If the Court grants Final Approval, the Settlement Administrator will disburse settlement checks within 30 days of the Effective Date. Settlement Class Members will then have 90 days to negotiate the check. *Id*. at ¶¶ 6(k) and 6(m). The settlement timeline is set out in greater detail within the Agreement. *Id*. at ¶¶ 5 and 6.

Pursuant to Federal Rule of Civil Procedure 23(e)(1), an order directing Notice to the Rule 23 class is justified where the Court concludes it will likely be able to (1) approve the settlement as fair, reasonable, and adequate, and (2) certify the class for purposes of judgment on the settlement. As demonstrated herein, the Parties' Agreement is a fair and reasonable resolution of a bona fide dispute between the Parties. Accordingly, Named Plaintiff requests—and Defendants do not oppose—that the Court permit the issuance of Notice to the Rule 23 class of the proposed settlement, approve the form and manner of notice to the class, appoint Plaintiff's counsel as interim Class Counsel pursuant to Fed. R. Civ. P 23(g)(1), appoint Apex Class Action LLC to administer the class notice plan and fulfill the duties of the Settlement Administrator as outlined

in the Agreement, and schedule a final fairness hearing following the 60-day notice period to determine whether final approval of the Settlement is appropriate. The Agreement, as well as the relevant Notice and Claim Forms, are attached hereto. *See* Joint Stipulation of Settlement.

After the notice period, Plaintiff will seek final approval of the settlement, including the proposed payments:  (i) a Service Award to the Named Plaintiff in the amount of $15,000; (ii) up to 1/3 of the Gross Settlement Amount (i.e., up to $500,000.00) to cover Plaintiff's Counsel's Attorneys' Fees; (iii) Litigation Expenses not to exceed $25,000.00; and (iv) Settlement Administration Costs. *See* Joint Stipulation of Settlement at ¶¶ 3(c), 3(g), and 3(h).

**II. FACTUAL AND PROCEDURAL BACKGROUND**

**A. Nature of the Claims.**

On June 5, 2024, Wade Allen filed this Action on behalf of himself and other similarly situated individuals, alleging that Defendants Turner Staffing Group, LLC and Barrick Gold of North America, Inc. violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq*., and Nevada Revised Statutes (NRS) § 608.018. Plaintiff alleges Defendants misclassified hourly workers as exempt and failed to pay them overtime wages when employees worked over 40 hours per week. Plaintiff further alleges workers were paid straight-time for overtime hours in violation of applicable law. Defendants deny these allegations, dispute that they violated any laws, and assert numerous defenses, including that Turner Staffing Group is not liable for any alleged violations committed by HR Advantages before Turner Staffing Group acquired HR Advantages in August 2023; that the putative collective and class members did not work overtime as alleged; that Plaintiff's damages model significantly overstated unpaid hours; and that factual disputes concerning time records and the statute of limitations for FLSA claims presented substantial challenges to certification, liability, and recovery.

**B. Procedural History of the Litigation.**

Plaintiff initiated this action on June 5, 2024. *See* ECF No. 1. After filing the Complaint, the Parties engaged in informal discovery and exchanged data concerning over 500 potentially affected employees. *See* Declaration of Nicholas Conlon ("Conlon Decl."), ¶ 4. The Parties then

1  participated in two mediation sessions, including a formal session held with experienced mediator

2  Peggy Leen on December 18, 2024. *Id.* at ¶ 8. Prior to mediation, the Parties conducted a thorough

3  analysis of pay records, job descriptions, and employment classifications to develop a model of

4  potential damages. *Id.*

5  The Parties reached an agreement on the material terms of the settlement during mediation

6  and subsequently finalized the Joint Stipulation of Settlement. The Agreement reflects a

7  compromise of contested legal and factual issues, including the scope of potential liability under

8  the FLSA and Nevada law, and whether joint employer and successor liability principles apply to

9  the Defendants. Pursuant to the settlement, on August 1, 2025, Plaintiff amended the complaint

10 with Defendants' consent to add Nevada Gold Mines, LLC as a Defendant, and to make the

11 collective and class definitions consistent with those in the Settlement Agreement. *See* Joint

12 Stipulation of Settlement at Paragraphs 2(r) and (u).

13 The Agreement now before the Court resolves the claims of all Settlement Class Members

14 through a common fund settlement structure. The Parties jointly seek the Court's preliminary

15 approval of the settlement and certification of the proposed FLSA collective and Nevada Rule 23

16 class for settlement purposes.

17 **III. SUMMARY OF THE SETTLEMENT TERMS**

18 **A. The Proposed Settlement Class and Class Period.**

19 The Parties ask the Court to certify, for settlement purposes only, the following:

20 FLSA Collective: "All individuals employed by Turner Staffing Group, LLC

21 and/or HR Advantages, LLC anywhere in the United States who were classified as

22 exempt and paid on an hourly, piece-rate or daily basis at any time during the Class

23 Period."

24 *See* Joint Stipulation of Settlement at Paragraph 2(r).

25 Nevada Wage Class: "All individuals employed by Turner Staffing Group, LLC

26 and/or HR Advantages, LLC in Nevada who were classified as exempt and paid on

27 an hourly, piece-rate or daily basis at any time during the Class Period."

28

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND
CERTIFICATION OF FLSA COLLECTIVE AND RULE 23 CLASS FOR SETTLEMENT
PURPOSES

*See* Joint Stipulation of Settlement at Paragraph 2(u).

**B. The Common Fund.**

The Gross Settlement Amount is $1,500,000.00, from which the following payments will be made: (i) Settlement Payments to Class and Collective Members; (ii) Attorneys' Fees not to exceed 1/3 of the Gross Settlement Amount ($500,000.00); (iii) Litigation Costs not to exceed $25,000.00; (iv) a Service Award to Plaintiff Wade Allen of $15,000.00; (v) Settlement Administration Costs; and (vi) employer's share of payroll taxes. *See* Joint Stipulation of Settlement at ¶ 3(c). Settlement Payments will be allocated 80% to FLSA claims and 20% to Nevada claims, and distributed on a pro rata basis based on each Settlement Class Member's employment dates, pay rates, and work hours, as reflected in Defendants' records. *See* Joint Stipulation of Settlement at ¶ 3(d); *see also* Exhibit 4, List of Settlement Awards.

**C. Direct Payments to Settlement Class Members.**

Class and Collective Members who do not exclude themselves (Nevada Class) and who timely return a valid Claim and Consent Form will receive their Settlement Award either by mailed check or, if elected through the Claims Administrator's website, via digital payment such as direct deposit, PayPal, or Venmo. Awards must be claimed or negotiated within 90 days of issuance. *See* Joint Stipulation of Settlement at ¶¶ 3(d), 6(m). Any paper checks not negotiated and any digital payments not claimed within 90 days will be void. For Nevada Class Members who fail to submit a valid and timely Claim and Consent Form and do not exclude themselves, their unclaimed Nevada Class Award will not revert to Defendants but instead will be distributed to the Food Bank of Northern Nevada as a *cy pres* beneficiary, as provided in Paragraph 6(o) of the Settlement Agreement. *See id*. The Settlement Administrator will use best practices, including address verification and re-mailing returned checks, to ensure maximum participation. See Joint Stipulation of Settlement at ¶¶ 6(f)–6(g).

**D. Release of Claims.**

Members of the FLSA Collective who opt in and negotiate their checks will release all federal wage-and-hour claims arising during the Covered Period and related to the facts asserted

in the Complaint. Nevada Class Members who do not exclude themselves will release any state-law wage-and-hour claims, including those under NRS Chapter 608, arising during the Class Period. Plaintiff Wade Allen will execute a broader general release as a condition of the Service Award. *See* Joint Stipulation of Settlement at ¶¶ 2(aa), 2(bb), 3(i).

**E. Settlement Administration.**

The Parties have selected Apex Class Action LLC to serve as the Settlement Administrator. Apex's duties include: mailing and emailing Notice Packets, tracking responses, calculating and issuing payments, withholding and reporting taxes, issuing Forms W-2 and 1099, reissuing returned or uncashed checks (if timely), and maintaining a toll-free number for inquiries. Apex will also establish and manage the Qualified Settlement Fund. *See* Joint Stipulation of Settlement at Paragraphs 3, 6(a)–6(l).

**F. Notice of Settlement.**

The Notice Packet includes either a single Notice (for FLSA Collective-only members) or a dual Notice (for FLSA and Nevada members), as well as the Claim and Consent Form and, where applicable, the Exclusion Form. These materials clearly inform class members of their rights, the terms of the settlement, estimated payment amounts, deadlines to opt in, opt out, or object within 60 days of the Notice Packet mailing, and contact information. Notices will be sent by mail, email, and SMS using last-known addresses and phone numbers, subject to skip-tracing. *See* Joint Stipulation of Settlement at Paragraphs 6(b)–6(g).

**G. Service Award.**

Subject to Court approval, Plaintiff Wade Allen will receive a Service Award of $15,000.00 in recognition of his efforts on behalf of the class, including his participation in the investigation, mediation, and resolution of the Action. This payment is in addition to any recovery as a class member and is disclosed in the Notice. *See* Joint Stipulation of Settlement at Paragraphs 3(g), 3(d).

**H. Plaintiff's Counsel's Attorneys' Fees and Litigation Expenses.**

Class Counsel will request attorneys' fees of up to 1/3 of the Gross Settlement Amount

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND CERTIFICATION OF FLSA COLLECTIVE AND RULE 23 CLASS FOR SETTLEMENT PURPOSES

($500,000.00) and reimbursement of actual litigation expenses up to $25,000.00. Defendants do not oppose these requests. The Notices fully disclose these amounts and inform class members of their right to object. *See* Joint Stipulation of Settlement at Paragraphs 3(h), 3(c).

## IV. ARGUMENT.

### A. The Standard of Review Under Rule 23(e).

The Court should approve the Settlement because it is fair, reasonable, and adequate, and because it mitigates—for all parties—the large expense and risk of pursuing this action through further discovery, summary judgment, and trial. "Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). The court reviews proposed class settlements in two stages, the first of which is a "preliminary fairness evaluation." *See Pierce v. Novastar Mortg., Inc.*, No. C05-5835RJB, 2007 WL 1847216, at *3 (W.D. Wash. June 27, 2007) (citing *Manual For Complex Litigation* (Fourth) § 21.632 (2004)).

The 2018 amendments to Rule 23 direct parties to present proposed class settlements "in terms of a shorter list of core concerns." Fed. R. Civ. P. 23(e)(2), 2018 Adv. Comm. Notes. These concerns, which Rule 23(e)(2) now requires courts to consider before approving a class settlement, include two concerns bearing on procedural fairness and two bearing on substantive fairness. *Id.* The two procedural concerns are whether plaintiffs and their counsel have adequately represented the class and whether the proposed settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(A)-(B). The two substantive concerns are whether the relief provided for the class is adequate and whether the proposed settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(C)-(D).

Plaintiff submits that review of these four core concerns favors the proposed Settlement and should give the Court confidence that it will be able to grant final approval after Class Members are given an opportunity to express their views.

### B. The Proposed Settlement is Fair, Reasonable, and Adequate.

Pursuant to Rule 23(e)(1)(B)(i), the Court may preliminarily approve a class action settlement if it "will likely be able to approve the proposal under Rule 23(e)(2)" which entails reviewing four enumerated factors. Plaintiffs addresses each factor in turn.

**1. Plaintiff's Counsel has Adequately Represented the Settlement Class Members.**

This factor focuses "on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23, Advisory Committee Notes (Dec. 1, 2018). One of the hallmarks of adequate representation is a thorough investigation and assessment of the class members' claims. *See* Fed. R. Civ. P. 23(e)(2)(A), Advisory Committee Notes. Formal discovery is not required, but counsel should have sufficient information to make informed decisions at the bargaining table. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

Here, Plaintiff's Counsel conducted a robust investigation before and during the course of the litigation. This included detailed interviews with the Named Plaintiff, review of applicable federal and state law, and an extensive analysis of pay and time records, job classifications, and employment structure for hundreds of potential class and collective members. *See* Conlon Decl. ¶ 3. Plaintiff's Counsel worked with Defendants' counsel to obtain class data through informal discovery, including records reflecting compensation, job location, pay type, and weeks worked. *Id.* at ¶ 4. This data enabled the development of a class-wide damages model that accounted for hours worked and rates of pay status across varied work sites and roles. *Id.* at ¶ 5.

Plaintiff's Counsel also participated in two full-day mediation sessions before Hon. Peggy A. Leen (Ret.), after which the Parties reached a settlement. *Id.* at ¶ 8. The proposed Agreement reflects a well-informed compromise based on a careful evaluation of the strengths and weaknesses of the claims and defenses. The Settlement will provide substantial relief to Settlement Class Members, with an average Settlement Award of at least $2,406.73, and a maximum Settlement Award of at least $95,549.62. *Id.* at ¶ 7.

Plaintiff's Counsel have extensive experience in wage-and-hour litigation, including nationwide FLSA collective actions and state law class actions under Rule 23. *Id.* at ¶ 1. Brown, LLC has served as lead or co-counsel in numerous wage-and-hour collective and class actions

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND CERTIFICATION OF FLSA COLLECTIVE AND RULE 23 CLASS FOR SETTLEMENT PURPOSES

1  across the country, consistently securing favorable outcomes for workers. Counsel's specialized

2  knowledge and experience in wage claims—particularly those involving joint employer liability

3  and misclassification—enabled them to evaluate this case effectively and to negotiate a favorable

4  outcome. *Id.* at ¶¶ 1-2.

5       In light of the thorough investigation, targeted discovery, experienced counsel, and

6  favorable recovery, the Court should find that the Settlement Class Members have been adequately

7  represented.

8  **2. The Settlement was Negotiated at Arm's Length.**

9       This factor focuses on whether the settlement negotiations "were conducted in a manner

10 that would protect and further the class interests." *See* Fed. R. Civ. P. 23(e), Advisory Committee

11 Notes. Here, this factor is satisfied because the settlement was achieved through arm's-length

12 negotiations, including two full-day mediation sessions overseen by retired Magistrate Judge

13 Peggy A. Leen, an experienced and respected wage-and-hour mediator. *See* Conlon Decl. ¶¶ 8-9;

14 *In re Viropharma Inc. Sec. Litig.*, 2016 WL 312108, at *8 (E.D. Pa. Jan. 25, 2016) (noting that

15 "participation of an independent mediator … virtually [e]nsures that the negotiations were

16 conducted at arm's length and without collusion between the parties") (quotes omitted).

17      Prior to mediation, the Parties exchanged detailed data and performed substantial analysis

18 regarding compensation structure, job classifications, worksite assignments, and potential

19 damages under both the FLSA and Nevada wage-and-hour laws. *Id.* at ¶ 8. This process enabled

20 the Parties to evaluate the strengths and weaknesses of their respective positions and negotiate

21 based on a comprehensive factual record. The resulting Agreement reflects a contested resolution

22 based on a thorough investigation and informed assessment of the legal and factual issues.

23      This is sufficient to establish a contested litigation. *See, e.g.*, *Furman v. At Home Stores*

24 *LLC*, No. 1:16-CV-08190, 2017 WL 1730995, at *1 (N.D. Ill. May 1, 2017) (finding litigation was

25 contested where the defendant denied that it violated wage and hour law, the parties reviewed

26 comprehensive payroll data in reaching the settlement, and the settlement was the result of arm's-

27 length negotiations).

28

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND
CERTIFICATION OF FLSA COLLECTIVE AND RULE 23 CLASS FOR SETTLEMENT
PURPOSES

1    The Court should find the settlement was negotiated at arm's length.

2    **3. The Relief Provided to the Settlement Class Members is Adequate.**

3    Rule 23(e) charges the Court to consider whether "the relief provided for the class is

4    adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness

5    of any proposed method of distributing relief to the class, including the method of processing class

6    member claims; (iii) the terms of any proposed award of attorney's fees, including timing of

7    payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *See* Fed. R. Civ.

8    P. 23(e)(2)(C)(i)–(iv).

9    Here, based on the timekeeping and payroll data received from Defendants, Plaintiff's

10    counsel estimated that the 198 Settlement Members stood to recover approximately $795,500.20

11    in unpaid overtime wages for the time period of January 1, 2022 to August 13, 2024, plus up to an

12    equal amount in liquidated damages. *See* Conlon Decl. ¶ 5. The Settlement significantly exceeds

13    that amount, by providing the Settlement Members with a Gross Settlement Amount of

14    $1,500,000.00 and a Net Settlement Fund of $948,000.00. *Id.* at ¶ 6. The strength of this recovery

15    is underscored by consideration of the serious risks and obstacles the Settlement Members would

16    have had to overcome to obtain the full amount of the estimated damages.

17    **a. The costs, risks, and delay of trial and appeal.**

18    Settlement Class Members faced significant litigation risks that weighed against the

19    possibility of recovering the full value of their estimated damages at trial. Defendants raised a

20    number of legal and factual arguments aimed at reducing or defeating liability altogether. They

21    asserted that the damages model advanced by Plaintiff was inflated because it inferred weekly

22    overtime based on biweekly payroll data, allegedly overstating the number of uncompensated

23    overtime hours. *See* Conlon Decl. ¶ 10. They pointed to specific examples in the payroll records

24    and timesheets which they claimed demonstrated inconsistencies or overestimations. *Id.* at ¶ 10.

25    Based on their own analysis, Defendants calculated total potential unpaid wages at just $428,000,

26    a figure more than $450,000 below Plaintiff's estimated back wages and more than $1.3 million

27    less than the full damages estimate inclusive of liquidated damages. *Id.* at ¶ 11. Had a court or jury

28

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND
CERTIFICATION OF FLSA COLLECTIVE AND RULE 23 CLASS FOR SETTLEMENT
PURPOSES

found Defendants' model more persuasive, or determined that Plaintiff's model relied too heavily on inference rather than direct time records, it could have substantially diminished any recovery.

Further, Defendants disputed the breadth of the class period and the scope of their liability, particularly as to conduct predating Turner Staffing Group's acquisition of HR Advantages. They argued that Turner should not be held responsible for any violations committed by HRA prior to August 2023, and that even post-acquisition conduct did not support a finding of willfulness that would extend the statute of limitations to three years. *Id.* at ¶ 12. If successful, these arguments would have significantly narrowed the recovery period and reduced the available damages.

Perhaps most significantly, as of the date of the mediation, only Plaintiff Wade Allen had filed a consent to join the lawsuit under the FLSA. Because the statute of limitations continues to run on the claims of putative FLSA Collective Members until they file written consent, any delay in joining the case could have caused many class members to lose part or all of their claims— particularly those arising in early 2022 or before (absent equitable tolling). The proposed settlement resolves this issue by allowing all participating Settlement Members to recover for the entire period beginning January 1, 2022, preserving claims that otherwise would have been arguably time-barred. *Id.* at ¶¶ 3-14. This feature of the settlement provides substantial added value and supports the adequacy of the relief under Rule 23(e).

Considering the costs, risks, and delay associated with trial and appeal, the proposed settlement satisfies Rule 23(e)(2)(C)(i).

**b. The effectiveness of the proposed method of distributing relief to Settlement Class Members.**

Under this factor, the Court considers whether the claims process is fair and facilitates the distribution of relief. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). The Agreement provides an efficient and reasonable structure. FLSA Collective Members must submit a timely Claim and Consent Form to receive their allocated share of the Net Settlement Fund. *See* Joint Stipulation of Settlement ¶¶ 3(d), 6(f). Nevada Class Members must submit a valid and timely Claim and Consent Form to receive their Nevada Class Award. Those who fail to submit the form and do not request exclusion

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND
CERTIFICATION OF FLSA COLLECTIVE AND RULE 23 CLASS FOR SETTLEMENT
PURPOSES

1  will not receive a payment, and their unclaimed Nevada Class Award will be distributed to the *cy*

2  *pres* beneficiary. *See id*. ¶ 6(m).

3        The Settlement Administrator will issue Notices by mail, email, and text message using

4  the best available contact information, including through address verification and skip tracing.

5  Class Members will be able to contact the Administrator via a toll-free number or settlement

6  website. *See id*. ¶¶ 6(a)–6(j). This Notice and distribution plan ensures high participation and is

7  designed to promote maximum participation and equitable distribution of the Net Settlement Fund,

8  further supporting preliminary approval.

9  **c. The relief provided to the Settlement Class Members is adequate considering the terms**

10 **of the proposed award of attorneys' fees.**

11       Rule 23(e) imposes an obligation on district courts to "balance the 'proposed award of

12 attorney's fees' vis-à-vis the 'relief provided for the class' in determining whether the settlement

13 is 'adequate' for class members." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607 (9th Cir.

14 2021). In the pre-certification context, this analysis coincides with the heightened scrutiny required

15 for pre-certification class settlements. *See id*. at 607–12.

16       Here, the Joint Stipulation of Settlement authorizes Class Counsel to seek up to $500,000

17 in attorneys' fees (i.e., 1/3 of the Gross Settlement Amount), plus reimbursement of up to $25,000

18 in litigation expenses. *See* Joint Stipulation of Settlement ¶ 3(h). This request is well within the

19 range of fees commonly awarded in wage-and-hour class actions involving common funds under

20 $10 million. *See, e.g., Singer v. Becton Dickinson & Co*., No. 08-CV-821-IEG (BLM), 2010 WL

21 2196104, at *8 (S.D. Cal. June 1, 2010) (approving one-third fee); *Miller v. CEVA Logistics USA,*

22 *Inc.*, No. 2:13-CV-01321-TLN, 2015 WL 4730176, at *8 (E.D. Cal. Aug. 10, 2015) (same); *Cicero*

23 *v. DirecTV, Inc.*, No. EDCV 07-1182, 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010)

24 (observing 30–40% as typical in similar cases).

25       The proposed award is fair and reasonable in light of the significant recovery for Settlement

26 Class Members, the contingent nature of the representation, and the experience and effort of Class

27 Counsel in investigating the claims, engaging in informal discovery, preparing for and

28

1  participating in two full-day mediations, and negotiating a favorable resolution for the Class

2  Members.

3          The fairness of the requested fee award will be further addressed in Plaintiff's motion for

4  final approval. For purposes of preliminary approval, however, the proposed fee terms support the

5  adequacy of relief under Rule 23(e)(2)(C)(iii).

6  **d. The relief provided to the Settlement Class Members is adequate considering there are**

7  **no agreements required to be identified under Rule 23(e).**

8          The only agreement between the Parties is the Joint Stipulation of Settlement, which is

9  filed with this Motion. *See* Conlon Decl. ¶ 17. There are no other agreements regarding the

10 Settlement Class Members or Attorneys' Fees related to this settlement. *Id.* at ¶ 17. This factor

11 weighs in favor of settlement approval.

12 **4. The Settlement Treats Settlement Class Members Equitably to One Another.**

13         This factor seeks to prevent the "inequitable treatment of some class members vis-a-vis

14 others." *See* Advisory Committee Notes. In this case, Plaintiff's Counsel diligently developed an

15 allocation formula that treats all Settlement Class Members fairly. Settlement Payments are

16 calculated on a pro rata basis using employment dates, pay rates, and work hours, as reflected in

17 Defendants' records. *See* Joint Stipulation of Settlement at ¶ 3(d). Accordingly, this factor favors

18 preliminary approval of the Agreement.

19 **D. Class Certification for Settlement Purposes is Appropriate**

20         The Court "will likely be able to… certify the class[es] for purposes of judgment on the

21 proposal." *See* Fed. R. Civ. P. 23(e)(1)(B). A determination of class certification requires a two-

22 step analysis under Federal Rule of Civil Procedure 23.

23         First, class certification is appropriate where the plaintiff demonstrates that the following

24 four Rule 23(a) factors are satisfied: numerosity (the class must be so large that joinder of all

25 members is impracticable); typicality (Named Plaintiff's claims are typical of those of the class);

26 commonality (there are questions of law or fact common to the class); and adequacy of

27 representation (Named Plaintiff and his counsel will fairly and adequately protect the interests of

28

the class). *See* Fed. R. Civ. P. 23(a)(1)–(4).

Second, the action must qualify under one of the three subsections of Rule 23(b). Rule 23(b) is satisfied where: (1) prosecuting separate actions would create a risk of inconsistent adjudications or substantially impair other class members' interests; (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, warranting final injunctive or declaratory relief; or (3) questions of law or fact common to class members predominate over individualized questions, and a class action is superior to other methods of adjudicating the controversy. *See* Fed. R. Civ. P.23(b)(1)–(3).

In this case, the proposed Nevada Wage Class satisfies the requirements of Rule 23, and thus can likely be certified at the final approval stage.

**1. The Class is Sufficiently Numerous.**

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members would be "impracticable." While there is no fixed threshold, courts have generally held that classes of 40 or more satisfy the numerosity requirement. *See Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1326–27 (W.D. Wash. 2015).

Here, the proposed Nevada Wage Class includes approximately 148 individuals employed in Nevada by Turner Staffing Group, LLC and/or HR Advantages, LLC during the Class Period, who were classified as exempt and paid on an hourly, piece-rate, or daily basis. *See* Conlon Decl. ¶ 6. Joinder of all members would be impracticable, and thus, the numerosity requirement is satisfied.

**2. The Class Shares Common Issues.**

For a class to be certified, questions of law or fact must exist common to the class. Fed. R. Civ. P. 23(a)(2). A plaintiff satisfies the commonality requirement by demonstrating the presence of issues common to all proposed class members. *Collins v. Gee W. Seattle, LLC*, No. C08-0238 MJP, 2009 WL 10725362, at *3 (W.D. Wash. May 11, 2009). Courts construe the commonality requirement permissively, and all questions of law and fact need not be common to satisfy subsection 23(a)(2). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "Even a single

1  question of law or fact common to the members of the class will satisfy the commonality

2  requirement." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 369 (2011).

3      Commonality is satisfied here. All of the Nevada Class Members were allegedly denied

4  overtime for hours worked beyond 40 hours in a workweek. The common questions raised by the

5  NRS § 608.018 allegations in this case include: whether Defendants had a practice of

6  misclassifying workers as exempt; whether Defendants failed to pay overtime compensation as

7  required under Nevada law; and whether Defendants' alleged illegal pay practices applied to all

8  Nevada Class Members. These common questions are sufficient to meet the Rule 23(a)

9  commonality requirement.

10 **3. Named Plaintiff Allen's Claims are Typical of Class Members.**

11     The Rule 23(a)(3) requirement of typicality is met here as well. "The test of typicality is

12 whether other members have the same or similar injury, whether the action is based on conduct

13 that is not unique to the named plaintiffs, and whether other class members have been injured by

14 the same course of conduct." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (internal

15 quotation marks omitted). "Under the rule's permissive standards, representative claims are

16 'typical' if they are reasonably co-extensive with those of absent class members; they need not be

17 substantially identical." *Hanlon*, 150 F.3d at 1020.

18     Here, Plaintiff Allen's claims are typical because his injuries stem from the same conduct

19 alleged to have affected and injured the Nevada Class Members. As described above, Defendants'

20 alleged misclassification of employees as exempt and failure to pay overtime wages for hours

21 worked over 40 per week are similarly alleged on behalf of the entire class. Accordingly, Plaintiff's

22 claims are typical of the class for purposes of settlement.

23 **4. Adequacy of Representation is Satisfied.**

24     Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the

25 interests of the class." Fed. R. Civ. P. 23(a)(4). Courts in the Ninth Circuit consider two questions

26 in evaluating this requirement: "(1) do the named plaintiffs and their counsel have any conflicts of

27 interest with other class members and (2) will the named plaintiffs and their counsel prosecute the

28

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND
CERTIFICATION OF FLSA COLLECTIVE AND RULE 23 CLASS FOR SETTLEMENT
PURPOSES

1    action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

2         Plaintiff Allen's and Class Counsel's interests are aligned with and not antagonistic to those

3    of the Nevada Class, as they share an interest in recovering compensation for the wage and hour

4    violations that Plaintiff alleges were suffered by the entire class. Plaintiff has demonstrated

5    commitment to the representation of the Class throughout this litigation, including by maintaining

6    regular communication with Class Counsel and providing information about his own experience

7    and the experiences of other Class Members. *See* Conlon Decl. ¶ 15. Plaintiff supplied Class

8    Counsel with factual details and documents that were critical to negotiating a classwide settlement.

9    *Id.* at ¶ 15.

10   **5.    Common Issues Predominate**

11        Rule 23(b)(3) also requires that the common questions of law or fact predominate over any

12   individual questions. The Ninth Circuit confirmed that, in the context of a settlement, a district

13   court's evaluation of Rule 23's predominance requirement should be relaxed. *In re Hyundai & Kia*

14   *Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019) ("[W]ether a proposed class is sufficiently

15   cohesive to satisfy Rule 23(b)(3) is informed by whether certification is for litigation or settlement.

16   A class that is certifiable for settlement may not be certifiable for litigation if the settlement

17   obviates the need to litigate individualized issues that would make a trial unmanageable."). The

18   predominance standard is met where a settlement concerns a "cohesive group of individuals [who]

19   suffered the same harm in the same way because of the [defendant's] alleged conduct." *Id.* at 559.

20        Here, Plaintiff alleges that all Nevada Class Members were classified as exempt, paid on a

21   non-salaried basis, and denied overtime wages in violation of NRS § 608.018. These claims are

22   based on uniform pay policies and classification decisions that apply broadly across the class.

23   "[T]he existence of certain individualized or deviating facts will not preclude certification if most

24   class members were subjected to a company policy in a way that gives rise to consistent liability

25   or lack thereof." *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008). When

26   assessing predominance, a court may consider that the proposed class will be certified for

27   settlement purposes only. See *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618–20 (1997).

28

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND
CERTIFICATION OF FLSA COLLECTIVE AND RULE 23 CLASS FOR SETTLEMENT
PURPOSES

1    Where the matter is being settled, a showing of manageability is unnecessary. *Id.* at 620.

2         Because the proposed Nevada Class consists of a cohesive group of individuals who

3    allegedly suffered the same type of harm in the same manner as a result of Defendants' common

4    conduct, the Court can reasonably find that the predominance requirement is satisfied for purposes

5    of certifying the class for settlement.

6    **6.    A Class Action Is a Superior Method of Adjudicating the Claims**

7         Rule 23(b)(3)'s superiority requirement is satisfied where "classwide litigation of

8    common issues will reduce litigation costs and promote greater efficiency," or where "no

9    reasonable alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th

10   Cir. 1996). In wage-and-hour cases, class treatment is routinely found to be superior because

11   uniform policies often impact large groups of workers similarly. See *Lerwill v. Inflight Motion*

12   *Pictures Inc.*, 582 F.2d 507, 512–13 (9th Cir. 1978).

13        Here, the proposed Nevada Class includes approximately 148 individuals subject to the

14   same classification and pay practices. Classwide resolution will avoid duplicative litigation,

15   promote efficiency, and reduce the risk of inconsistent outcomes. Given the relatively modest

16   recovery for each individual, few if any class members would likely pursue claims on their own.

17   See *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 515 (9th Cir. 2013). Any individual who wishes

18   to proceed separately may opt out of the settlement. Accordingly, class treatment is the superior

19   method for adjudicating these claims.

20   **C. Plaintiff's Counsel Should Be Appointed as Interim Class Counsel.**

21        Jason T. Brown and Nicholas Conlon of the firm Brown, LLC should be appointed as

22   interim Class Counsel pursuant to Fed. R. Civ. P. 23(g)(3). Rule 23(g), which governs the

23   standards and framework for appointing class counsel for a certified class, sets forth four criteria

24   the district court must consider in evaluating the adequacy of proposed counsel: (1) "the work

25   counsel has done in identifying or investigating potential claims in the action;" (2) counsel's

26   experience in handling class actions, other complex litigation, and the types of claims asserted in

27   the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will

28

1  commit to representing the class. *See* Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider

2  any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the

3  class. Fed. R. Civ. P. 23(g)(1)(B).

4      Brown, LLC meets all of these criteria. The firm has been appointed as class counsel in

5  numerous wage-and-hour class and collective actions across the country and has obtained

6  substantial recoveries for thousands of workers. *See* Conlon Decl. ¶ 12. In this case, Class Counsel

7  has conducted a thorough investigation of the claims, reviewed extensive data provided by

8  Defendants, participated in two full-day mediation sessions, and diligently negotiated the terms of

9  the Settlement Agreement. Brown, LLC has the experience, resources, and demonstrated

10 commitment to effectively represent the interests of the Settlement Class. *Id.* at ¶¶ 3-4, 18.

11 Accordingly, the Court should appoint Jason T. Brown and Nicholas Conlon as interim Class

12 Counsel pursuant to Rule 23(g)(3) (providing that the "court may designate interim counsel to act

13 on behalf of a putative class before determining whether to certify the action as a class action.").

14 **D. The Court Should Approve the Parties' Proposed Settlement Notice Program.**

15     When a class action lawsuit is settled, "[t]he court must direct notice in a reasonable manner

16 to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23

17 further mandates "the best notice that is practicable under the circumstances, including individual

18 notice to all class members who can be identified through reasonable effort." Fed. R. Civ. P.

19 23(c)(2)(B). Courts have emphasized that such notice must be reasonably calculated to apprise

20 interested parties of the pendency of the action and afford them an opportunity to present

21 objections. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985).

22     Here, all of the requirements are satisfied. Pursuant to the Joint Stipulation of Settlement,

23 Apex Class Action LLC, an experienced third-party Settlement Administrator, will be provided

24 with the name, last known address, employee ID number, last known telephone number, email

25 address, and dates of employment for each Settlement Class Member. Apex will then distribute

26 the Notice Packet via U.S. mail, email, and SMS using skip-tracing where necessary. *See* Joint

27 Stipulation of Settlement at ¶ 6(b)–(c).

28

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND
CERTIFICATION OF FLSA COLLECTIVE AND RULE 23 CLASS FOR SETTLEMENT
PURPOSES

1  Settlement Class Members will have sixty (60) days from the date of mailing to submit a

2  Claim and Consent Form (FLSA Collective), to object, or to request exclusion (Nevada Class).

3  *See* Joint Stipulation of Settlement at ¶ 6(e). The Notice forms clearly inform Settlement Class

4  Members of their rights, the nature of the action, the definition of the class certified, the claims

5  and defenses, the right to appear through counsel, the procedures for exclusion or objection, and

6  the binding effect of the settlement. Fed. R. Civ. P. 23(c)(2)(B); *see also* Joint Stipulation of

7  Settlement, Exs. 2A, 2B, 3.

8  Importantly, the Notice Packet includes an individualized page for each Settlement Class

9  Member explaining their estimated settlement award and the methodology used to calculate it. The

10  Notice materials are written in plain language and are designed to be easily understood. The

11  proposed Notice program satisfies the requirements of Rule 23(c)(2)(B) and due process by

12  ensuring that all reasonably identifiable Settlement Class Members are notified and afforded a

13  meaningful opportunity to make informed decisions about their rights. This factor therefore

14  supports preliminary approval of the settlement.

15  **E. The Standard of Review for Approval Under the FLSA.**

16  Named Plaintiff requests the Court approve the FLSA settlement as set forth in the

17  Agreement. Where the litigation arises from a private enforcement action under Section 216(b) of

18  the FLSA, the standard for approval of a settlement is straightforward: a district court should

19  approve a settlement if it was reached as a result of contested litigation and it is a fair and

20  reasonable resolution of a bona fide dispute between the parties. *See Lynn's Food Stores, Inc. v.*

21  *United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982) (citing *Brooklyn Savings Bank v. O'Neil*,

22  324 U.S. 697 (1945)). Court approval is appropriate if the settlement is a "fair and reasonable

23  resolution of a bona fide dispute." *Stenschke v. Lufthansa Technik N. Am. Holding Corp.*, No. C21-

24  1646, Dkt. No. 18 at 1 (W.D. Wash. Mar. 16, 2023) (quoting *Lynn's Food Stores*, 679 F.2d at

25  1355). Accordingly, before granting final approval of the FLSA component of the Settlement, the

26  Court should determine whether the Agreement resolves a *bona fide* dispute and whether it

27  represents a fair and reasonable compromise under the circumstances.

28

A settlement addresses a *bona fide* dispute when it "reflect[s] a reasonable compromise over issues ... that are actually in dispute." *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014) (quoting *Lynn's Food Stores* , 679 F.2d at 1355). Here, the Parties' competing positions regarding the extent to which Plaintiffs were entitled to overtime compensation for hours worked over 40 in a workweek, particularly in light of Defendants' alleged failure to pay an overtime premium for such hours, demonstrate the existence of a *bona fide* dispute at the time of mediation and settlement. Plaintiff contends that Defendants failed to properly compensate Settlement Class Members in violation of the FLSA, while Defendants deny any liability and assert that their pay practices complied with applicable law. *See* Joint Stipulation of Settlement, at ¶¶ 3(h)–(i). This dispute supports a finding that the Settlement resolves a *bona fide* dispute under the FLSA.

The settlement is also a fair and reasonable resolution of the disputed FLSA claims. It provides substantial monetary relief to eligible FLSA Collective Members without the burden or risk of continued litigation. The Gross Settlement Amount was the product of two full-day mediation sessions following investigation, legal analysis, and the exchange of employment and payroll data. The Parties considered the likelihood of certification, the defenses raised by Defendants, and the risk that continued litigation could delay or reduce recovery. The allocation methodology ensures proportional payments based on objective criteria and provides each participating FLSA Collective Member with compensation reflective of their work history. Given the inherent uncertainty in continued litigation and the strong result achieved, the Court should find that the settlement provides a fair and reasonable resolution of the FLSA claims.

**F. The Enhancement Award to the Class Representative Is Reasonable and Likely to Be Approved at the Final Approval Stage**

The Settlement provides for an Enhancement Award of $15,000.00 to Plaintiff Wade Allen in recognition of his efforts as Class Representative. This modest request—representing just 1% of the $1.5 million Maximum Settlement Amount—is well within the range of awards routinely approved by courts in the Ninth Circuit and is warranted by Plaintiff's active and sustained

involvement in this litigation.

The Ninth Circuit recognizes that service or enhancement awards are appropriate to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaking in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). District courts in this Circuit have consistently approved service awards in this range for similar wage-and-hour cases. *See May v. Wynn Las Vegas, LLC*, No. 2:15-cv-02142-RFB-DJA, 2021 U.S. Dist. LEXIS 15898, at *10 (D. Nev. Jan. 25, 2021) (approving $15,000 service awards for each of three class representatives in a wage-and-hour settlement totaling $898,500.00); *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1179 (S.D. Cal. 2016) (approving $5,000 service award and $5,500 general release payment in $50,000 FLSA collective settlement).

Courts typically assess the reasonableness of service awards based on the extent of the representative's contributions and the risks undertaken. *Daniels v. Aria Resort & Casino, LLC*, No. 2:20-cv-00453-GMN-DJA, 2023 U.S. Dist. LEXIS 50271, at *15–16 (D. Nev. Mar. 23, 2023) (citing *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008)). Mr. Allen has satisfied both criteria. He took a public stand against alleged systemic wage-and-hour violations at substantial personal risk and participated meaningfully in the litigation and resolution of this matter, including providing detailed information and documents used in pre-suit investigation and during mediation, staying in consistent contact with Class Counsel throughout the case, and remaining responsive and available during the negotiation and documentation phases. *See* Conlon Decl. ¶¶ 15-16. He is committed to continued cooperation in securing final approval of the Settlement. *Id.* at ¶ 16.

Mr. Allen's contributions were significant and directly benefitted the proposed FLSA Collective and Nevada Class. His time, attention, and risk exposure justify the requested award.

For these reasons, the requested $15,000 Enhancement Award is reasonable, consistent with circuit precedent, and likely to be approved at final approval. The Court should preliminarily approve it, subject to final review under Rule 23(e)(2) and the applicable standards.

G. Scheduling the Final Approval Hearing is Appropriate.

The last step in the settlement approval process is a final fairness hearing at which the Court may hear all evidence and argument necessary to make its settlement evaluation. Plaintiff respectfully requests that the Court schedule the final approval hearing for a date no earlier than 100 days after the entry of the Preliminary Approval Order. This will ensure sufficient time for (i) Defendants to transmit the Settlement Member List to the Claims Administrator within 14 days of preliminary approval (¶ 6(a)); (ii) the Claims Administrator to disseminate the Notice Packet by mail, email, and text within 30 days thereafter (¶ 6(b)); and (iii) Settlement Members to exercise their rights to submit claims, object, or request exclusion by the 60-day response deadline (¶¶ 2(f), 2(x), 6(c), 6(g), 6(h)). Scheduling the final approval hearing after this period ensures compliance with the terms of the Joint Stipulation of Settlement and ensures all deadlines in the Settlement are met and provides the Parties and the Court with sufficient time to address any objections, disputes, or administrative issues prior to the final fairness hearing.

## VI. CONCLUSION

Plaintiff requests the Court grant his Unopposed Motion for Preliminary Approval of Settlement and Motion for Certification of Class and enter the contemporaneously submitted Proposed Order.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND CERTIFICATION OF FLSA COLLECTIVE AND RULE 23 CLASS FOR SETTLEMENT PURPOSES

1  / / /

2  / / /

3  / / /

4  / / /

5  / / /

6  / / /

7  / / /

8  / / /

9       Respectfully Submitted

10                     Dated: August 1, 2025

11                     BROWN, LLC

12                     */s/ Nicholas Conlon*

13                     NICHOLAS CONLON, ESQ.
                            *Admitted Pro Hac Vice*

14                     111 Town Square Place, Ste. 400
                            Jersey City, New Jersey 07310

15                     T: (877) 561-0000
                            F: (855) 582-5297

16                     nicholasconlon@jtblawgroup.com

17                     ROGER WENTHE, ESQ.

18                     ROGER WENTHE, PLLC
                            Nevada Bar No. 8920

19                     2831 St. Rose Pkwy., Suite 200
                            Henderson, Nevada 89052

20                     T: (702) 971-0541
                            roger.wenthe@gmail.com

21

22                     *Proposed Class Counsel*

23

24

25

26

27

28

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND CERTIFICATION OF FLSA COLLECTIVE AND RULE 23 CLASS FOR SETTLEMENT PURPOSES

1
2
3
4
5
6
7
8
9

## <u>CERTIFICATE OF SERVICE</u>

10

11        I hereby certify that on August 1, 2025, I electronically filed the foregoing UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND CERTIFICATION OF FLSA COLLECTIVE AND RULE 23 CLASS FOR SETTLEMENT PURPOSES with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent automatically to all counsel of record by operation of the Court's electronic filing system, including the following:

12

13

Roger Wayne Wenthe
14   Roger Wenthe, PLLC
     2831 St. Rose Pkwy., Suite 200
15   Henderson, NV 89052
     T: 702-971-0541
16   roger.wenthe@gmail.com

17   *Attorneys for Plaintiffs*

18   Anthony L. Hall
     Simons Hall Johnston PC
19   690 Sierra Rose Drive
     Reno, NV 89511
20   Phone 775-785-0088
     Fax 775-785-0087
21   ahall@shjnevada.com

22   *Counsel for Defendant Barrick Gold of North America, Inc.*

23   Joshua A. Sliker
     Jackson Lewis P.C.
24   300 S. Fourth Street, Suite 900
     Las Vegas, NV 89101
25   Phone 702-921-2460
     Fax 702-921-2461
26   joshua.sliker@jacksonlewis.com

27   *Counsel for Defendant Turner Staffing Group, LLC*

28

24

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND
CERTIFICATION OF FLSA COLLECTIVE AND RULE 23 CLASS FOR SETTLEMENT
PURPOSES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Nicholas Conlon*
NICHOLAS CONLON, ESQ.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND
CERTIFICATION OF FLSA COLLECTIVE AND RULE 23 CLASS FOR SETTLEMENT
PURPOSES